Theo K. GROSS, Appellant
(Defendant below),

v.

STATE of Indiana, Appellee
(Plaintiff below).

No. 382S95.

Supreme Court of Indiana.

Jan. 18, 1983.

Marcus C. Emery, Steers, Sullivan, McNamar & Rogers, Indianapolis, for appellant.

Linley E. Pearson, Atty. Gen. of Indiana, Joseph N. Stevenson, Deputy Atty. Gen., Indianapolis, for appellee.

HUNTER, Justice.

The defendant, Theo K. Gross, was convicted by a jury of theft, a Class D felony, Ind.Code § 35–43–4–2 (Burns 1979 Repl.) and of being an habitual offender, Ind.Code § 35–50–2–8 (Burns 1979 Repl.) and was sentenced to the Indiana Department of Correction for a period of thirty-four years. His direct appeal raises the following eight issues:

1. Whether the trial court erred by entering a judgment of conviction on theft as a Class D felony before the start of the habitual offender phase of the trial;

2. Whether the court erred in failing to excuse one juror despite allegations of statements made by this juror that would indicate bias and prejudice against the defendant;

3. Whether certain official documents were admitted into evidence without being properly certified;

4. Whether certain exhibits containing prior judgments of commitment were erroneously admitted into evidence;

5. Whether the trial court erred in permitting the jury to view an exhibit which allegedly contained hearsay evidence;

6. Whether the court erred in admitting testimony concerning a prior sale of a truck;

7. Whether defendant was denied his constitutional right to the effective assistance of counsel; and

8. Whether there was sufficient evidence to support the verdict of the jury.

A brief summary of the facts from the record most favorable to the state shows that on April 3, 1979, Dan McCarty of Indianapolis discovered that his black, 1978 Ford pickup truck had been stolen and reported this to the police. Three days later, Police Officer Larry Harshman and another officer were assigned to surveillance duty in the parking lot of a Steak and Ale restaurant. They made a videotape recording of the sale of a dark Ford truck by defendant to an undercover police officer, Sergeant Joe Fitch. The surveillance officers saw the transaction live and through their video monitor and identified the person who delivered the truck and received money for it as defendant. Both officers had previously seen defendant make a similar sale on March 27, 1979.

I.

Defendant first contends that the trial court erred in entering a judgment of conviction on theft as a Class D felony prior to the beginning of the habitual offender phase of the trial. He points out that the sentencing provisions for Class D felonies are unique in that the trial court has authority to enter a judgment of conviction for a Class A misdemeanor and sentence accordingly, in lieu of the conviction for a Class D felony. Ind.Code § 35–50–2–7 (Burns 1979 Repl.). If defendant had been

convicted of a Class A misdemeanor, the habitual criminal charge would not apply. Defendant argues that in the instant case, the court entered judgment on the Class D felony without considering the presentence report or holding a sentencing hearing and that he was therefore denied the right to present evidence of mitigating circumstances prior to the entry of judgment.

We have held in similar cases that it is the "better practice" for a trial court to determine whether or not it will enter judgment for a Class D felony or a Class A misdemeanor prior to continuing with the habitual offender phase of the proceedings. This will assure a defendant that he is not unnecessarily subjected to the habitual offender proceeding in those cases where a judgment for a Class A misdemeanor is entered. *Funk v. State,* (1981) Ind., 427 N.E.2d 1081; *Collins v. State,* (1981) Ind., 415 N.E.2d 46. We stated:

> "[W]e believe that it would be the better practice in the future, in the case of a guilty verdict on a class D felony, for the court, prior to the trial on the status question and after considering the presentence investigation report and arguments of counsel, to determine whether or not it will withhold judgment for a class D felony and enter judgment for a class A misdemeanor instead." *Id.,* 415 N.E.2d at 56.

We further held, however, that the failure of the trial court to enter judgment on the Class D felony prior to the habitual offender proceeding is not reversible error. *Funk v. State, supra; Collins v. State, supra.*

In the case at bar, the trial court did enter judgment for the Class D felony at the proper time but did not consider the presentence investigation report or arguments of counsel before entering judgment. While we agree that the better practice would be for the trial court to consider the presentence report and arguments of counsel before entering judgment for a Class D felony prior to the start of the habitual offender phase of the trial, we find no actual requirements which mandate this. Our statutes do require that the trial court must consider a presentence report and hold a sentencing hearing prior to or at the time of sentencing. Ind.Code §§ 35–4.1–4–3, 35–4.1–4–5, 35–4.1–4–7, and 35–4.1–4–9. The entry of judgment of conviction can obviously be made at a time prior to the actual sentencing and this entry of judgment does not necessarily trigger any of the above statutory requirements. In fact, a presentence report may not be available to a court until sometime after the trial.

Here, the trial court did hold a full sentencing hearing and considered the presentence report before actually imposing any sentences. We find no reversible error here as the trial court had an adequate basis to enter the judgment of conviction on the Class D felony after receiving the jury's verdict of guilty on the Class D felony and hearing all of the facts which supported this verdict. Furthermore, a proper sentencing hearing was held prior to the actual imposition of sentences. We find no reversible error here.

## II.

Defendant next contends that the trial court erred in failing to excuse one juror for prejudice and alleges that there was evidence of juror misconduct which denied him a fair trial. After the jury had been sworn in, defendant's mother-in-law told the court that she heard one juror, Mable LaThorpe, make a comment prior to her voir dire that she could tell just by looking at defendant that he had been in a lot of trouble. This juror was then questioned by the court and explained that she had said that defendant looked familiar to her at first because he looked like a patient who had been in trouble in the drug unit at the V.A. hospital where she had worked. It was determined during voir dire that defendant had never been a patient in the V.A. hospital. The juror assured the court that she realized that defendant was not the person who had been in the hospital and she was certain that she did not know him. We find no error here as the questioning of this juror clarified the remark which was overheard and established that there was no prejudice to defendant.

In his motion to correct errors, defendant raised another allegation of juror misconduct involving this juror. Defendant presented the affidavit of an individual, Donald Stone, Jr., who stated that he had talked with LaThorpe's boyfriend, Louis Pinnick, outside of the courtroom, on the day of the hearing on the habitual offender charge. He stated that Pinnick told him that LaThorpe said that defendant had been in a lot of trouble before and had received a prior prison term in Noblesville. Both LaThorpe and Pinnick denied making any of these alleged statements. The only facts in evidence that Pinnick could not have gained the information by sitting in the audience at the trial were the self-serving statements of defendant's wife and mother-in-law that they observed the audience and did not see Pinnick there.

■ It is well settled that juror misconduct is in the first instance a question for the trial court and the decision to grant or deny a mistrial is a matter committed to the trial court's discretion, reviewable solely on the issue of abuse of discretion. *Smith v. State,* (1982) Ind., 432 N.E.2d 1363; *Bean v. State,* (1978) 267 Ind. 528, 371 N.E.2d 713. Here, the statements made by Stone in his affidavit were unsupported since both LaThorpe and Pinnick denied that they had ever discussed the facts of the case outside of the courtroom. The contradicted statements of one witness do not meet defendant's burden of supporting the claim of jury misconduct where there is no corroboration thereof. *Rinard v. State,* (1979) Ind., 394 N.E.2d 160. We find no substantial evidence that defendant was denied his right to a fair and impartial jury. There was no error here.

### III.

Defendant next contends that certain of the state's exhibits were erroneously admitted because they were admitted as certified copies of records without a proper certification and without a testimonial sponsor. These exhibits were all records of the Indiana Department of Correction concerning defendant's prior commitments to the Indi-

ana Reformatory. They were certified as correct by Sam Whiteman as the official keeper of the records. He listed his office address as the State Office Building in Indianapolis. The documents were notarized by a notary whose residence was in Madison County. Defendant argues that since Whiteman's office was listed as being in Marion County, that must be the location where the records were kept and therefore the notary in Madison County was not qualified to authenticate these documents. We find no merit to these contentions.

■ It is clear that official records may be admitted as evidence when they are certified by the official keeper of the records, with proof of that officer's custody given by a judge of that jurisdiction or by any public officer with seal of office and official duties in the jurisdiction in which the record is kept. Ind.R.Tr.P. 44(A)(1); *Barnett v. State,* (1981) Ind., 429 N.E.2d 625; *Gilmore v. State,* (1981) Ind., 415 N.E.2d 70. In the instant case it was uncontradicted that Sam Whiteman was the official keeper of the records of the Indiana Reformatory. The listing of his office address in Indianapolis does not show that the Reformatory records were kept at any other location than the Reformatory itself which is located in Madison County. The documents were properly certified and authenticated by a proper official in Madison County. It was not necessary that the prison officials themselves had to testify to establish the authenticity of the documents. Ind.Code §§ 34–1–17–7 and 34–1–18–7 (Burns 1973); *Graham v. State,* (1982) Ind., 441 N.E.2d 1348; *Barnett v. State, supra; Eldridge v. State,* (1977) 266 Ind. 134, 361 N.E.2d 155. We find no error in the admission of any of these documents.

### IV.

■ Defendant also contends that certain of the state's exhibits which each showed a judgment of commitment to the Department of Correction were improperly admitted because none of them contained the amount to be credited toward payment of the fines or costs for time spent in con-

finement before sentencing as required by Ind.Code § 35–4.1–5–1(b)(5) (35–50–5A–1)(b)(5) (Burns 1979). We find no merit to this contention. The record shows that one of the judgments of commitment, state's exhibit No. 11, does show the amount of time to be credited. Three of the judgments are shown in the form of record book entries which do not necessarily contain all the details of the judgments. One judgment leaves the amount of time to be credited blank which would mean no time was credited on that judgment. Finally, one judgment was entered in 1970 prior to the enactment of a statute requiring that the amount of time credited be shown.

All of the above documents are properly authenticated and do sufficiently establish the fact of each prior commitment. Furthermore, any technical irregularity in the manner of entering a judgment of commitment does not render that judgment void and must be asserted in the court where the judgment was entered. *Bailer v. Dowd,* (1942) 219 Ind. 624, 40 N.E.2d 325. There was no error here.

### V.

■■■ Defendant alleges that it was error to permit the jury to view state's exhibit No. 1, which was a videotape of the transaction between defendant and the undercover police officer, Fitch. Defendant claims that the tape's audio quality was very poor. He also claims that since Sergeant Fitch did not testify, due to illness, to clarify any of the recorded statements, the statements were inadmissible hearsay. However, defendant had filed a motion to suppress the video tape. The trial court viewed the tape prior to trial and ruled that it was sufficiently clear—both audibly and visibly—to be presented to the jury. When the tape was introduced at trial, defendant specifically stated he had no objection to the tape being shown.

We have consistently held that harmful error, if any, in the admission of evidence occurs when the questioned evidence is admitted at trial, and if error in its admission is to be available for appellate review, a proper objection must be entered at the time it is offered. *Akins v. State,* (1981) Ind., 429 N.E.2d 232; *Young v. State,* (1980) Ind., 409 N.E.2d 579. Defendant has waived any error on this issue.

### VI.

■■■ Defendant next contends that certain testimony of one of the surveillance police officers was improper. Officer Davidson identified defendant as the person he had observed from the surveillance truck selling the stolen black Ford truck to Sergeant Fitch on April 6, 1979. He was then asked about a prior occasion during which he had come into contact with defendant. He stated that on a date about two weeks earlier than April 6, he and Fitch had purchased a green Ford truck. Defendant objected when Davidson was asked whom the truck was purchased from. The objection was overruled and Davidson stated that it was defendant who sold them the truck. As the state correctly points out, Davidson never said that the green truck was stolen, so this was not evidence of prior wrongful conduct of defendant.

The record also shows that another police officer had already testified about a transaction involving a green truck which was stolen and there was no objection to this prior testimony. It is clear that the erroneous admission of evidence is harmless if it is only cumulative of other undisputed and properly admitted evidence. *Jackson v. State,* (1980) Ind., 402 N.E.2d 947; *Ballard v. State,* (1974) 262 Ind. 482, 318 N.E.2d 798. Consequently, even if Davidson's testimony was improper any error in this line of questioning was harmless.

### VII.

Defendant alleges that he was denied his right to the effective assistance of counsel based largely upon the fact that his counsel filed a motion for continuance four days prior to the trial. In the motion, counsel stated that there was a medical emergency in her family and that she had insufficient time to properly prepare for the case. The continuance was denied and the trial was held as scheduled.

The record shows that trial counsel was retained approximately two months before the trial after four other private and court-appointed attorneys had withdrawn. The case was approximately a year and a half old at that time. Trial counsel stated that she had viewed the videotapes and discussed the case with Officer Fitch prior to the time she filed the motion for continuance. The facts of the case and the expected testimony of witnesses other than Fitch were not unduly complicated. There is no evidence that counsel was not able to complete making adequate preparation for the case in the remaining days before the trial. It is well settled that the trial court's ruling on a motion for continuance under these circumstances lies within its sound discretion and will be reversed only where a manifest abuse of discretion is shown. *Aron v. State,* (1979) Ind., 393 N.E.2d 157; *Works v. State,* (1977) 266 Ind. 250, 362 N.E.2d 144. We find no abuse of discretion here.

Defendant also alleges that certain actions and inactions of his trial counsel amount to the denial of effective assistance of counsel. He includes in this argument the fact that although counsel moved to suppress the videotape, she did not preserve the error by renewing her objection at trial. He also alleges that counsel proceeded to trial without discovery and that there was error during the polling of the jurors because the trial court prevented counsel from asking follow-up questions of one particular juror.

Regarding competency of counsel, it has been more than frequently stated by this Court that there is a presumption that counsel is competent and that strong and convincing evidence is required to rebut the presumption. *Hollonquest v. State,* (1982) Ind., 432 N.E.2d 37; *Lindley v. State,* (1981) Ind., 426 N.E.2d 398; *Jones v. State,* (1978) 270 Ind. 141, 387 N.E.2d 440. Incompetency of counsel revolves around the particular facts of each case and the standard of review on this issue is the mockery of justice test as modified by the adequate legal representation standard. *Darnell v. State,* (1982) Ind., 435 N.E.2d 250; *Crisp v. State,* (1979) Ind., 394 N.E.2d 115; *Cottingham v. State,* (1978) 269 Ind. 261, 379 N.E.2d 984. Deliberate choices made by counsel for some contemplated tactical or strategic reason do not establish ineffective assistance of counsel. This Court will not speculate as to what may have been the most advantageous strategy in a particular case. *Morris v. State,* (1980) Ind., 409 N.E.2d 608; *Hollon v. State,* (1980) Ind., 398 N.E.2d 1273.

Here, the record shows that although no discovery motions were filed by this trial counsel, there was an order of automatic discovery entered by the court and the state complied with this order. Counsel thoroughly cross-examined witnesses and presented evidence on defendant's behalf. The decision not to object to the admission of the videotape at trial was a tactical judgment in this case since the court had already viewed the tape and ruled on its admissibility. We have consistently held that we do not second-guess counsel's tactical decisions; instances of isolated poor strategy or bad tactics do not necessarily amount to ineffective assistance of counsel. *Morris v. State, supra; Cottingham v. State, supra.*

After the verdict on the habitual offender count had been returned, the jury was individually polled. Defense counsel pointed out that one juror seemed to be hesitating before she answered that her verdict was guilty. The juror was questioned a second time and answered affirmatively that her verdict was guilty. While defendant now claims that he should have been allowed to question this juror further, he cites no authority to support this position. We find no abuse of discretion in the trial court's determination that the two affirmative answers from this juror were sufficient to show that she fully assented to the guilty verdict. Looking at the total circumstances of the trial, we find no strong and convincing proof that counsel failed to discharge her duty fully.

## VIII.

Defendant finally contends that there was insufficient evidence to sustain his convictions on both counts. He bases this claim on the theory that the state's exhibits involving the sale of the stolen truck and the documents evidencing his prior convictions were inadmissible. We have found previously in this opinion these exhibits were properly admissible.

In considering the sufficiency of the evidence, it is well settled that as a court of review, we will neither reweigh the evidence nor judge the credibility of witnesses. Rather, we look only to that evidence most favorable to the state and all reasonable inferences to be drawn therefrom. If there is substantial evidence of probative value to support the conclusion of the trier of fact, the judgment will not be overturned. *Fielden v. State,* (1982) Ind., 437 N.E.2d 986; *Duffy v. State,* (1981) Ind., 415 N.E.2d 715; *Wofford v. State,* (1979) Ind., 394 N.E.2d 100. Here, there was evidence that the black Ford truck was a stolen vehicle and evidence from the videotape and the two police officers in the surveillance truck that defendant sold this truck to Officer Fitch for $400. There were certified documents which established each of defendant's prior convictions and sufficiently identified defendant as the individual who served each of the prior commitments. This was substantial evidence of probative value to support the jury's verdict.

For all of the foregoing reasons, there was no reversible error and the judgment of the trial court should be affirmed.

Judgment affirmed.

GIVAN, C.J., and DeBRULER, PRENTICE and PIVARNIK, JJ., concur.